UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WILLIE C. JONES, JR. | CIVIL ACTION NO. 11-cv-1400 |
| VERSUS | JUDGE WALTER |
| BRAD ANDERSON, ET AL | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Willie Carl Jones, Jr., a self-represented inmate, filed this civil rights action based on allegations that Bossier Parish Sheriff's Deputy Brad Anderson subjected him to excessive force when Plaintiff was housed at a Bossier facility. Plaintiff also names as defendants Deputy Joseph Rowland, Chief Bloxom (referred to by Plaintiff as Bloxon), (former) Sheriff Larry Deen, the Bossier Parish Sheriff's Office ("BPSO"), and the Parish of Bossier.

Plaintiff, after filing various amendments to his complaint and motions to compel, filed a Motion for Partial Summary Judgment (Doc. 44) as to liability of all defendants except Chief Bloxom. Defendants (except for the BPSO and Parish of Bossier) responded by filing their own Motion for Summary Judgment (Doc. 59) and Amended Motion (Doc. 66) that asks for summary judgment on all claims. There are genuine disputes of fact that preclude the granting of summary judgment with respect to the claims against Deputy Anderson but, for the reasons that follow, all other defendants should be dismissed.

**Summary Judgment Standard**

Under Fed. R. Civ. Pro. 56(a), the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.

**Summary Judgment Evidence**

**A. Defendants' Evidence**

The altercation that gave rise to the suit occurred during the uniform exchange in E-Pod at the Bossier Parish Maximum Security Facility. Chief of Corrections Charles Gray testifies by affidavit that inmates in E-Pod are segregated in individual cells, and inmates in the pod are often considered a threat to themselves, other inmates, or employees. Security cameras are placed throughout the pod to capture the general area and the front of all cells. Two cells have cameras inside them, but E-107 in which Plaintiff was housed did not have

an inside camera. It was directly across from a camera, and a copy of the relevant video (with no audio) accompanies Gray's affidavit.

Deputy Anderson testifies by affidavit that Plaintiff requested a size 3XL uniform from the trustee who was handing out clean uniforms. Anderson states the inmates often request larger size uniforms in order to "sag," so he asked Deputy Rowland, who was working in the control room, to open the door to Plaintiff's cell so that Anderson could assess Plaintiff's size and determine if a size 3XL was needed. Anderson states that he saw Plaintiff was about 5'11" and 195 pounds, determined that a size 3XL was too large, and ordered the trustee to give Plaintiff a size 1XL uniform. He requested Plaintiff try it on for size. Plaintiff immediately threw the 1XL uniform on the ground. To this point, Anderson's testimony is generally backed by the video recording. The events described after this are not established by the recording, due to a lack of audio and a lack of a clear view of what happened inside the cell.

Anderson testifies that Plaintiff threw down the 1XL uniform and stated, "I ain't wearing that mother f*****." At the same time, Anderson testifies, Plaintiff "bladed his body, balled his fist in an aggressive manner, and stepped toward the cell door" where Anderson was standing.[1] Anderson testifies that he knew Plaintiff was convicted of murder

[1] There is no elaboration on what "bladed his body" means, but one case reports that this is a reference to assuming a sideways, aggressive, fight stance. Harris v. U.S., 422 F.3d 322, 326 (6th Cir. 2005). It is also used at times to describe a position taken to conceal something along one's side or that a police officer might take to prevent access to his holstered weapon.

as a juvenile and committed two more murders after he was released from prison at age 21. He also knew that Plaintiff had caused "multiple disturbances with other deputies," including failure to comply with orders and even physical resistance.

Anderson testifies that he believed he was in imminent danger of harm. He pushed Plaintiff back into the cell to create distance, but Plaintiff charged back and swung his right fist at Anderson, who then delivered "two distractionary strikes" to Plaintiff's left cheek and restrained Plaintiff against the wall of the cell. Anderson testifies that he grabbed his radio and requested assistance. Plaintiff continued to struggle, pulling Anderson's name tag and flag pin off his uniform and pulling at his neckline. Anderson testifies that he placed his radio on the top bunk bed, grabbed both of Plaintiff's hands, and placed Plaintiff on the ground using a controlled hold. Deputy Mora (not a defendant) arrived and handcuffed Plaintiff.

Anderson says that he saw a small laceration under Plaintiff's left eye, and he saw Plaintiff's eyeglasses lying broken on the floor. It appeared to him that the laceration was caused from the eyeglasses. He requested medical assistance, and Deputy Rowland arrived to provide medical care. Plaintiff continued to be verbally combative after the incident.

Deputy Rowland cleaned the cut with gauze, and Anderson called EMS for additional treatment. EMS arrived about 45 minutes after the incident, advised that sutures would be needed, but said EMS transport was not needed. About 20 minutes later, according to Anderson, two deputies took Plaintiff to LSU Medical Center. Plaintiff returned about four hours later without sutures. A medical report from the visit describes the event as laceration

without sutures, which it describes as follows: "This is a tear of the layers of your skin. It has not required stitches (sutures)."

Deputy Rowland testifies that he saw Deputy Anderson speaking to Plaintiff, and Anderson radioed for Rowland to open Plaintiff's cell. Rowland turned on the camera facing the cell and opened the door. Rowland testifies that he saw Plaintiff take the new uniform and throw it back at Anderson, who then stepped into Plaintiff's cell. Rowland testifies that he saw Anderson take Plaintiff to the ground using a controlled hold, after which Deputy Mora arrived and assisted in handcuffing Plaintiff.

**B. Plaintiff's Evidence**

Plaintiff's motion and his opposition to Defendant's motion are accompanied by declarations made by Plaintiff, under penalty of perjury, pursuant to 28 U.S.C. § 1746. These declarations are competent sworn testimony for summary judgment purposes. Hart v. Hairston, 343 F.3d 762, 764 n.1 (5th Cir. 2003). On the other hand, mere statements in unsworn memoranda are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

Plaintiff's description of the events is consistent with that offered by Defendants until the moment Plaintiff is handed the 1XL uniform. Plaintiff testifies that he dropped it on top of the 3XL uniform, which the video supports, and told Anderson, "I am not going to wear that size uniform." Plaintiff testifies that Anderson then charged into his cell, punched Plaintiff with a balled fist, and struck Plaintiff in the face with a radio, which destroyed Plaintiff's eyeglasses and caused "a deep cut with uncontrollable bleeding" under the left

eye. Plaintiff specifically denies that he cursed or became hostile, bladed his body, balled his fist, or stepped toward the doorway. The video does not clearly show Plaintiff doing any of those things, but the video does not clearly depict Plaintiff at that point so as to rule out such actions.

Deputies took statements from other inmates in the area, which were written on a document titled Uniform Complaint Form Affidavit. The inmates generally back Plaintiff's version of the events that Deputy Anderson charged Plaintiff "out of nowhere." A paper that accompanies the document includes an affirmation that the statement will be truthful, correct, and within the personal knowledge of the witness, but the statement is not sworn before a notary or in compliance with Section 1746, so it is doubtful these "affidavits" are competent summary judgment evidence. Unsworn statements are not appropriate for consideration on summary judgments. Timberlake v. Teamsters Local Union No. 891, 428 Fed. Appx. 299, 301 (5th Cir. 2011), citing Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987).

**Analysis**

**A. Deputy Anderson**

Anderson and Rowland testified that "at the time of the incident" they "knew" Plaintiff had a juvenile conviction of murder and had later committed two more murders and received a life sentence. Plaintiff accuses the officers of testifying falsely in their affidavits.

He submits court minutes that indicate he was not convicted of the two murders until September 17, 2010, several days after the August 31, 2010 altercation. Plaintiff also states that the earlier conviction was not for murder as a juvenile, but was a 1995 adult conviction for attempted second degree murder.

The appellate decision in State v. Jones, 81 So.3d 236 (La. App. 2d Cir. 2011), writ denied, 88 So.3d 462 (La. 2012) indicates that Plaintiff, who was well known in Shreveport's Highland neighborhood for involvement in the drug and prostitution trade, was convicted of two counts of second degree murder. He first killed a drug customer by shooting him seven times. A few days later, when he learned police were looking for him, he killed a prostitute who could testify against him on the first murder. He shot her five times and stabbed her four times. The decision also mentions the 1995 guilty plea to attempted second degree murder in an incident arising from a failed car-jacking at Byrd High School, just behind Plaintiff's mother's house. The officers may have been off a bit on the details of Plaintiff's criminal history, but they were right to believe that he was not to be trusted.

Even if Plaintiff was a pretrial detainee rather than a convicted prisoner at the time of the incident, the Fifth Circuit employs the same analysis in both situations. The question is whether the measure taken inflicted unnecessary and wanton pain and suffering. That will depend on whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. Valencia v. Wiggins, 981 F. 2d 1440, 1446 (5th Cir. 1993); Brothers v. Klevenhagen, 28 F.3d 452, 456 (5th Cir. 1994).

There is a genuine dispute of material fact with regard to this claim. Deputy Anderson presents evidence to suggest that his use of force was taken in response to acts of aggression by Plaintiff. If that is true, then his use of force might be considered a good-faith effort to maintain or restore discipline. On the other hand, Plaintiff presents competent evidence that Plaintiff merely disagreed with the uniform size selection and dropped the uniform he had been handed when Anderson suddenly attacked him and beat him with his fist and a radio. Those facts do not indicate a good-faith effort to maintain or restore discipline, and a reasonable jury might consider that they were the malicious and sadistic use of force for the purpose of causing harm. Under these circumstances, summary judgment is not permitted. This claim will have to be resolved by the jury trial that Plaintiff requested in his Amended Complaint (Doc. 42).

**B. Deputy Rowland**

There is no evidence that Deputy Rowland did anything other than open the cell door for Deputy Anderson and, after the events, cleaned the cut below Plaintiff's eye. There is no evidence that Rowland knew when he opened the door that Anderson would attack Plaintiff, nor that Rowland was in a position where he could and should have intervened to stop Anderson. Rowland was stationed in the key room, and the incident lasted only a few seconds. Plaintiff complains in his memoranda that Rowland attempted to cover up what

Anderson did, but he has not explained how that forms a basis for an actionable Section 1983 claim against Rowland. All claims against Rowland should be dismissed.

**C. Sheriff Deen and Chief Bloxom**

The Amended Complaint that added Chief Bloxom as a defendant alleged that he was liable for failure to train Anderson and Rowland. Doc. 42. To establish the liability of a supervisor for failure to train, the plaintiff must demonstrate that the supervisor (1) failed to supervise or train the officer who committed the underlying constitutional violation; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. City of Canton v. Harris, 109 S.Ct. 1197 (1989); Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

Defendants' Amended Motion (Doc. 66) challenged Plaintiff's ability to present any evidence that Bloxom failed to train or supervise Anderson (or Rowland) or that Plaintiff could satisfy the other elements of this theory of liability. Plaintiff's Memorandum in Opposition (Doc. 71) does not present any evidence that would establish a failure to train claim. Plaintiff makes assertions in his memorandum that Bloxom failed to properly discipline Anderson and Rowland after the incident, but that does not present a basis for Section 1983 liability. Plaintiff also complains that Chief Bloxom said he would talk to Plaintiff about the incident but did not do so. That may have disappointed Plaintiff, but it did not violate the Constitution.

Plaintiff argues that Chief Bloxom and Sheriff Deen are liable because they failed to remedy past abuses of inmates by Anderson and Rowland, to the point there was a policy or custom of unconstitutional actions. Plaintiff does not present any evidence of such a history to support his argument. He says that he filed motions to compel discovery and sought a list of all complaints, grievances, and incidents filed against Anderson and Rowland. That is true, but the court denied his motion because the request, as written, was overly broad and sought disclosure of personal and confidential records that would not be relevant to the claims at issue. The court noted that a more narrowly drawn request might be upheld, but asking for all grievances ever filed regarding even "mistreating inmates" was overly broad. The court declined to reward Plaintiff for his overly broad request by narrowing it for him to a permissible degree. Doc. 68. Accordingly, Plaintiff is unable to produce any evidence of a pattern of similar violations, which is usually required to establish that a supervisor was deliberately indifferent with regard to supervision or training. Estate of Davis, 406 F.3d at 382-83. Plaintiff's unsworn memorandum refers to the beating of inmates Robert McCoy and Freddie Lee, but Plaintiff does not suggest that Anderson or Rowland were involved, and he offers no competent evidence of these alleged events. Even if proven up properly, two other claims do not form a pattern of unconstitutional activity of which Sheriff Deen or Chief Bloxom should have been aware. See Roberts v. City of Shreveport, 397 F.3d at 295 (two other claims did not form pattern, citing Pineda v. City of Houston, 291 F.3d 325, 329 (5th Cir. 2002) (finding 11 incidents insufficient to establish a pattern of unconstitutional events). Chief Bloxom and Sheriff Deen are entitled to summary judgment.

**D. BPSO and Parish of Bossier**

The claim against the BPSO is improper because a Louisiana parish "sheriff's office" is not a legal entity capable of being sued. Cozzo v. Tangipahoa Parish Council–President Government, 279 F.3d 273, 283 (5th Cir.2002); Valentine v. Bonneville Ins. Co., 691 So.2d 665, 668 (La. 1997). The proper defendant is the sheriff himself, and that claim was addressed above.

The claim against the Parish of Bossier lacks any legal or factual basis. A Louisiana parish, governed by a police jury, has the responsibility of providing a good and sufficient jail and for the physical maintenance of parish jails and prisons. But the administration of the jails is the province of the sheriff, not the police jury. O'Quinn v. Manuel, 773 F.2d 605 (5th Cir.1985). Deputies are employed by the sheriff, not the parish. There is no basis for the liability of the parish in this excessive force case. See Rader v. Cowart, 2010 WL 3522371 (W.D. La. 2010) (dismissing claim against parish police jury by inmate who alleged deprivation of medical care); and Williams v. Franklin, 2009 WL 4424203, *4 (W.D. La. 2009) (dismissing claim against parish police jury by inmate who alleged jail guards abused him and failed to protect him).

The BPSO and Parish of Bossier have not moved for dismissal or summary judgment, but "[a] district court may dismiss an action on its own motion under Rule 12(b)(6) as long as the procedure employed is fair." Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). This procedure is fair, because this Report and Recommendation provides Plaintiff with

sufficient notice of and opportunity to respond to the possible dismissal of the claims. See Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998).

**Conclusion**

Genuine disputes of material fact prevent summary judgment with respect to the excessive force claims against Deputy Anderson, but all other claims are ripe for summary judgment. If Judge Walter agrees with these recommendations, the court will then issue an order setting a schedule for the filing of pretrial statements (exhibits and witness lists). After those are filed, the court will hold a pretrial conference for the purpose of setting a trial date, discussing witness attendance issues, and any other issues presented by the pretrial statements or that commonly arise in prisoner litigation. Arrangements will be made for Plaintiff, now housed at the Louisiana State Penitentiary at Angola, to participate by telephone.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 44) be **denied** and that Defendants' Motion for Summary Judgment (Doc. 59) and Amended Motion (Doc. 66) be **granted in part** by dismissing all claims against Sheriff Larry Deen, the Parish of Bossier, the Bossier Parish Sheriff's Office, Deputy Joseph Rowland, and Chief Bloxom, but **denied** with respect to the claim against Deputy Brad Anderson. The only remaining claim will be for excessive force against Deputy Anderson.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of September, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE